*In re* PETITION OF HUME.

CLAIM OF F. R. CRUIKSHANK & CO.

1. SALES—TITLE-RETAINING CONTRACTS—OPTIONAL REMEDIES.
   It is permissible, in title-retaining contract, to provide that vendor have option of repossessing property in case of default or declaring balance of contract price due and payable forthwith, but he may exercise only one of said optional remedies.

2. CONTRACTS—CONSTRUED MOST STRONGLY AGAINST PARTY PREPARING THEM.
   Any ambiguity in sales contract prepared by vendor must be construed more strongly against it than against opposite party.

On what amounts to a conditional sale, see annotation in 17 A. L. R. 1421; 43 A. L. R. 1247.

3. CHATTEL MORTGAGES—TITLE-RETAINING CONTRACTS.
   Mere recital of retention of title in instrument itself is not
   conclusive as to whether it is conditional sales contract or
   whether it does pass title notwithstanding recital to contrary.

4. SAME—CONSTRUCTION—RECITALS IN INSTRUMENT SIGNIFICANT BUT
   NOT CONTROLLING.
   In determining whether instrument is conditional sales contract
   or chattel mortgage, it is significant, although not controlling,
   that it is not drafted in form or couched in terms of ordinary
   chattel mortgage, that no promissory notes accompany it, that
   no provision is made for recovery of deficiency in event of
   foreclosure, and that nowhere in instrument or in correspond-
   ence between parties is it referred to as chattel mortgage.

5. SAME—WHERE TITLE DID NOT PASS CHATTEL MORTGAGE COULD
   NOT BE GIVEN.
   Where instrument provided that title should not pass to buyer
   until fully performed and it never was fully performed, title
   did not pass, and therefore buyer could not give chattel
   mortgage.

6. SAME.
   Holding of trial court that instrument in question is not chattel
   mortgage, *held*, correct.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 12, 1932. (Docket No. 89, Calendar No. 36,791.) Decided December 6, 1932.

In the matter of the petition of Thomas H. Hume and others for the dissolution of Fitzjohn Manufacturing Company. On claim of F. R. Cruikshank & Company, a New York corporation, for deficiency for goods sold under an alleged chattel mortgage. Judgment for defendant (receiver). Claimant appeals. Affirmed.

*Harold H. Smedley* (*Arthur S. Jones,* of counsel), for claimant.

*Edward C. Farmer,* for appellee.

NORTH, J. Petition for the dissolution of Fitzjohn Manufacturing Company (herein called defendant) was filed in the circuit court for the county of Muskegon, and a receiver was appointed July 13, 1931. F. R. Cruikshank & Company, a New York corporation (herein called plaintiff), presented its claim for allowance in the sum of $23,772.80. From a disallowance of this claim it has appealed.

In August, 1929, plaintiff entered into an agreement with the Fitzjohn Company for installing in its manufacturing plant a sprinkler equipment and for coverage of the same by fire insurance. The contract provided for the payment of $4,969 upon installation and a like annual payment on December 1, 1930, 1931, 1932, 1933, and 1934. Installation was completed, and the contract was filed as a chattel mortgage and annual renewal certificates were also filed. The controlling question in this case is whether the instrument was in fact and law a chattel mortgage, as claimed by plaintiff, or whether it was a title-retaining sales contract, as asserted by defendant. On December 10, 1931, the receiver sold the assets of the Fitzjohn Manufacturing Company. This sale was subject to any rights of plaintiff in the sprinkler system. On the same date plaintiff gave notice of the sale of the property covered by its contract with defendant. The sale was conducted as a chattel mortgage sale, and the property sold to plaintiff for the sum of $50. Its claim of $23,772.80 was for the balance which it asserted was due it from defendant under the contract for the installation of the sprinkler system. The trial judge held that the contract under which this sprinkler system was installed was a title-retaining contract, and since plaintiff repossessed itself of the property and sold it, it had made an election of

its remedy and could not thereafter assert a claim in the receivership for the balance of the purchase price. In reviewing this determination, appellant asserts that the instrument executed by the defendant incident to the installation of the sprinkler system was in fact a chattel mortgage, and that therefore appellant was possessed of the right to foreclose its chattel mortgage and thereafter assert a claim in the receivership for any unpaid portion of the purchase price.

As noted above, the whole controversy turns upon the determination of whether the instrument in question is a chattel mortgage or a title-retaining sales contract. The instrument covers nine printed pages of the record, and we forego full reproduction. In it plaintiff is designated as the "company" and the defendant as the "purchaser." It evidently was a form prepared and used by plaintiff. Aside from the use of the word "purchaser," especial care seems to have been taken to avoid any expression indicative of a transfer of the title of the property by plaintiff to defendant prior to the time the payments provided for in the contract were made in full. After reciting that plaintiff agrees to procure fire insurance, covering defendant's property in which the sprinkler system was to be installed, the contract recites:

"Clause 4. The company agrees * * * it will cause to be installed in the premises described * * * a wet and dry pipe system of approved fire extinguishing apparatus, * * * hereinafter referred to as a 'sprinkler equipment,' in accordance with plans * * * and to maintain same at its own expense for the period of this contract (subject to certain provisions not here material).

"Clause 5. The purchaser agrees to pay the company the following sums of money on the following dates: * * * If the purchaser makes any default hereunder or fails to make any one of the above payments on the date such payment be due, all payments then due and thereafter to become due hereunder shall at the option of the company become forthwith due and payable; that upon any default by the purchaser all the rights, title and interest, if any, of the purchaser in any improvements placed upon the assets (property of defendant) by the company shall immediately cease and the company with or without the aid of legal process may enter the assets (property of defendant) and * * * remove any part or all such improvements therefrom, * * * without claim for damages or otherwise against the company and without prejudice to its rights hereunder. * * * At the company's option, the purchaser shall be deemed to have made default hereunder if it be adjudicated a bankrupt or become insolvent, or if a receiver be appointed for it. * * *

"Clause 7. The title to said sprinkler equipment shall remain at all times in the company, and the company agrees that at the full termination of this contract and upon the faithful compliance by the purchaser with the terms and conditions herein contained and the making of all the payments by it required to be made at the times fixed and specified for making same, all improvements which the company may place upon the premises and which then are in or upon said premises, *shall become the sole property of the purchaser and the company shall make, execute, acknowledge and deliver at that time a proper bill of sale for same to the purchaser.*"

Plaintiff asserts that because of the provision in clause 5 that it may repossess itself of the property, and "without prejudice to its rights hereunder," the instrument should be construed as a chattel mortgage; and that to hold otherwise de-

prives the above-quoted provision of any meaning whatever in the instrument. We think this contention of plaintiff is not well founded; and that, instead, the meaning of the quoted expression is much more apparent if the instrument is construed as a title-retaining contract, by the terms of which it was intended to provide that the vendor might have the option of repossessing the property in case of default or declaring the balance of the contract due and payable forthwith. Such provisions are permissible in title-retaining sales contracts, but the vendor has the right to exercise only one of the optional remedies. *Young* v. *Phillips,* 203 Mich. 566.

Since this contract was prepared by plaintiff, any ambiguity therein must be construed more strongly against it than the opposite party. *Patterson* v. *Miller,* 249 Mich. 89. But aside from this rule of construction, it appears that this instrument expressly retains title in plaintiff, and nowhere does it expressly or by fair implication transfer title to the defendant as a purchaser. It goes without saying that unless title to the property passed to defendant it could not give a chattel mortgage thereon. And further, if title did not pass to the defendant at the time of the execution of this instrument, so that it was in position to give a chattel mortgage at that time, it did not subsequently become vested with title and therefore could not and did not mortgage the property. It is not contended in behalf of appellant, nor could it be, that it had a right to elect at its option to hold under this instrument as a mortgagee or as a contract vendor retaining title.

We are mindful of the fact that mere recital of retention of title in the instrument itself is not conclusive as to whether it is a conditional sales con-

tract or whether the instrument, notwithstanding recital to the contrary, does pass title. *National Cash Register Co.* v. *Paul,* 213 Mich. 609, 615 (17 A. L. R. 1416), citing *Chicago Railways Equipment Co.* v. *Merchants Bank;* 136 U. S. 268 (10 Sup. Ct. 999). But as was noted by Justice STONE in the *National Cash Register Company Case, supra,* in arriving at a proper construction we look "into the contract and accompanying papers, and the surrounding circumstances." While perhaps not controlling in the instant case, it is significant that the instrument which plaintiff asserts is a chattel mortgage is by no means drafted in the form or couched in the terms of the ordinary chattel mortgage; no promissory notes seem to have been executed by defendant in connection therewith; there is no provision for recovery of a deficiency in the event of foreclosure of the instrument as a chattel mortgage; and nowhere in the instrument or in the correspondence between the parties is it referred to as a chattel mortgage. Instead, it is designated as "a contract," and by its express terms it is a title-retaining contract. Further, by the terms of this contract, plaintiff's right to repossess itself of the property is closely, and we think inseparably, connected with the provision therein that in case of default "all the rights, title and interest, *if any,* of the purchaser * * * shall immediately cease."

The above-noted features of this contract are quite in contrast with the provisions in the contracts involved in the cases cited and relied upon by appellant. For example, in *National Cash Register Co.* v. *Paul, supra,* wherein it was held that title to the property passed, Justice STONE stated:

"In the instant case there are present the elements of a bill of sale, with notes as collateral

security, as in the case of *Young* v. *Phillips, supra.* Lasley (the vendee) gave an order for the manufacture and shipment to him of a cash register 'for which undersigned agrees to pay you $550 in 22 monthly payments of $25.' This is not the language of a bailment, but of a purchase.''

As hereinbefore noted, in preparing this contract, appellant seems to have studiously avoided expressions or terms which are commonly characteristic of sale or purchase. On the other hand, on its face, this is a contract by which plaintiff undertook to install, insure, and maintain in defendant's manufacturing plant a sprinkler system, and defendant agreed to pay for such installation and services the various amounts provided in the contract on the dates specified. By its terms this contract was not to be fully performed by either party until December 1, 1934, and the contract by express terms provides that when it is fully performed (and obviously not before) the sprinkler system ''shall become the sole property of the purchaser and the company shall make, execute, acknowledge and deliver *at that time* a proper bill of sale for same to the purchaser.'' Earlier in the same clause of the contract it is specifically provided that title to the sprinkler equipment ''shall remain at all times in the company'' until the contract was fully and faithfully performed, in this connection expressly providing for ''making of all payments.'' This contract was never fully performed by either party. In fact, full performance was not contemplated by the terms of the contract until December 1, 1934. Until it was performed title could not and did not pass to defendant; and if defendant did not have title, it could not give a chattel mortgage.

We think it clear from this record that the parties did not intend that title to this sprinkler system should  pass to defendant, and this is true notwithstanding the contract also included the cost of fire insurance.  The very fact that the appellant provided for carrying the insurance primarily at its own expense is quite indicative that it retained title to the property.  The holding in the circuit court that the instrument was not a chattel mortgage was correct, and plaintiff's claim filed in the receivership was properly disallowed.

Affirmed, with costs to appellee.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.