LYNCH v. NATIONAL ACCEPTANCE COMPANY OF CHICAGO.

1. JUDGMENT—RES JUDICATA—REPLEVIN.
   Portion of judgment in replevin with reference to portion of goods seized by plaintiff upon which the trial judge fixed a value and gave defendant judgment therefor was *res judicata,* where plaintiff took no cross appeal therefrom.

2. CHATTEL MORTGAGES—CONSTRUCTION OF CONTRACTS.
   An instrument must be considered as a chattel mortgage of per-sonalty if, either standing alone or read in the light of the surrounding circumstances, it appears to have been given as a security.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur, Judgments, §§ 178, 218.
[2, 4] 10 Am Jur, Chattel Mortgages, §§ 2, 4.
[3] 12 Am Jur, Contracts, §§ 2, 226 *et seq.*
[5-7, 9] 10 Am Jur, Chattel Mortgages, §§ 8, 9; 47 Am Jur, Sales, § 828 *et seq.*
[5-7, 9] What amounts to a conditional sale. 17 ALR 1421; 43 ALR 1248; 92 ALR 304; 175 ALR 1366.
[8] 12 Am Jur, Contracts, § 252.

3. CONTRACTS—CONSTRUCTION.

The character of an instrument is to be determined from its terms, from a consideration of rights and remedies stipulated therein or allowed by law as between the parties and to some extent in the light shed by the circumstances surrounding the transaction.

4. CHATTEL MORTGAGES—SALES.

An instrument whereby the seller of goods is not limited to right to retake the property and retain the payments made but, after reclamation, may enforce payment of the remainder of the full agreed price will be recognized in fact and law as security in the nature of a chattel mortgage.

5. SAME—SALES—RETAKING—RETENTION OF PARTIAL PAYMENTS.

An instrument whereby title is retained as security for the payment of the full price and the obligation to further pay is not abated by a retaking of the property and retention of partial payments is not a pure conditional sale but an undertaking in the nature of a chattel mortgage.

6. SAME—CONDITIONAL SALES—THIRD PERSONS.

An instrument giving the seller of chattels the rights and remedies of a chattel mortgagee against the buyer and chattels the subject of sale, if rights of third persons do not intervene, but so colored as to be employed in support of a claim of conditional sale only, when rights of third persons do intervene, is *ab initio* an instrument in the nature of a chattel mortgage.

7. SAME—CONDITIONAL SALES AGREEMENT—CONSTRUCTION OF CONTRACTS—NOTES PAYABLE TO THIRD PARTY—PAYMENT TO SELLER—INCLUSION OF OTHER ITEMS.

A claimed conditional sales contract will not be treated as such where a detachable promissory note payable to a third party has been given for an amount that is more than the original conditional sales contract purchase price, the seller received payment from the third party payee in the promissory note, the chattel purchased on a previous conditional sales agreement for which the questioned sales agreement sued on, was a substitute, was subject to the questioned sales agreement and chattels purchased on open account were comingled with chattels purchased on a previously existing conditional sales agreement as items sold under the claimed conditional sales agreement.

8. CONTRACTS—AMBIGUITY.

Ambiguities appearing in instruments must be resolved against the preparer.

9. Chattel Mortgages—Conditional Sales Contract.

> Seller of air conditioning unit on a conditional sales agreement who later sold other articles on open account and subsequently caused to be executed a note by the buyer with a bank as payee in an amount which included the balance due for the air conditioning unit, the unpaid amount for the other articles and a finance charge, which note was a part of an instrument in the form of a conditional sales contract, was not entitled to possession or the value thereof as against chattel mortgagee under mortgage on file before the additional articles had been sold on open account but included in the mortgage by an after-acquired property clause and which had been foreclosed before seller commenced action of replevin, such seller having created a chattel mortgage, not a conditional sales contract as claimed.

Appeal from Wayne; Maher (Thomas F.), J. Submitted January 3, 1951. (Docket No. 39, Calendar No. 44,982.) Decided March 1, 1951.

Replevin by George F. Lynch, doing business as Economy Refrigeration & Air Conditioning Service, against National Acceptance Company of Chicago, a Delaware corporation, to recover certain merchandise. Judgment for plaintiff for part of merchandise. Defendant appeals. Reversed.

*Shock, Bolton & Graham,* for plaintiff.

*Levin, Levin, Garvett & Dill (Earlmont H. Dill,* of counsel), for defendant.

Reid, C. J. This is an appeal from a judgment in favor of plaintiff in an action of replevin. Issue was joined on a declaration and on the answer of the interpleaded defendant, National Acceptance Company of Chicago, the original defendants Leonard M. Rozner and L. M. Rozner Manufacturing Company, a Michigan corporation, were defaulted and judgment also ran against them. Defendant National

Acceptance Company of Chicago, a Delaware corporation, which claims to be chattel mortgagee of the goods taken on the writ of replevin, took upon itself the active defense of the case and will hereinafter be referred to as the defendant.

On October 7, 1946, plaintiff, doing business as Economy Refrigeration & Air Conditioning Service, hereinafter referred to as plaintiff Lynch, sold to L. M. Rozner Manufacturing Company on a conditional sales contract, an air conditioning system, described in and according to the terms of exhibit No 1 (the first conditional sales contract). It is admitted by defendant that plaintiff retained title to the equipment.

On October 30, 1946, Rozner company mortgaged to defendant all of its assets, some 692 items of factory equipment, referred to in exhibit No 7, which included either by inadvertence or fraudulent design on the part of Rozner, the air conditioning unit described in exhibit No 1 and to which the Rozner company *then* had no title.

On November 25, 1946, plaintiff sold to Rozner company a bar, sometimes called barette (exhibit No 5), and on December 4, 1946, a heating coil and thermostat (exhibit No 6), which 3 items were taken on the writ, the return of which defendant waived and on which the court fixed a value of $325, and for which defendant was given judgment.

The matters mentioned in the paragraph next above are of no concern to plaintiff here because no cross appeal was taken and that phase of this case is *res judicata.*

In December, 1946, plaintiff Lynch needed money, negotiated with the Industrial National Bank, procured from Rozner company a note payable directly to the bank and a second conditional sales contract, exhibit No 2, payable to plaintiff Lynch covering not only the air conditioning unit but also the bar and

heating coil and thermostat and also finance charges, and plaintiff Lynch pledged exhibit No 2 with the bank, with the Rozner company promissory note attached to exhibit No 2 and with plaintiff's full indorsement with recourse, and received from the bank 90 per cent. of the moneys owing under exhibit No 2.

Rozner company made no payments on the contract and plaintiff was obliged to take a re-assignment of the collateral and pay the bank, which he did, July 28, 1947. Plaintiff then started this replevin action against Rozner and L. M. Rozner Manufacturing Company, and John Doe, later the National Acceptance Company of Chicago impleaded as John Doe. Rozner was defaulted and defendant National Acceptance Company of Chicago contests the replevin action, claiming the right to the air conditioning unit, bar, heating coil and thermostat by virtue of the foreclosure of its chattel mortgage. It waived return of the property and asked for money judgment for the value.

The circuit court gave plaintiff the air conditioning unit and defendant the money value of the bar, heating coil and thermostat, and fixed the value at $325, from which latter part of the judgment no appeal was taken.

Defendant Acceptance company admits that exhibit No 1, the contract of October 7, 1946, was a conditional sales contract, but claims that exhibit No 2 and the giving by Rozner company of the note direct to the bank, followed by payment to plaintiff Lynch of money received on the note, operated as payment of exhibit No 1, the contract of October 7, 1946, and that the cashing of the note by plaintiff paid up the balance that was unpaid under exhibit No 1, thereby giving Rozner company title to the apparatus which was then in place and in operation on Rozner company's property and as subsequently acquired property such apparatus became subject

to defendant Acceptance company's mortgage, which covered after-acquired property and was filed October 30, 1946.

Mr. Rozner testified that by the note, exhibit No 2, he obligated himself (and his company) to pay the bank $3,081.19 and that that was more than was owing on the air conditioning system under exhibit No 1, which sum ($3,081.19) included the balance under exhibit No 5 for the bar and for the heating coil and thermostat under exhibit No 6, also finance charges which Rozner further testified were added by the bank to be included in the note to the extent of two or three hundred dollars.

Rozner, who was plaintiff's witness, gave testimony which is convincing that exhibit No 2 was made as a financing transaction and such was the purport of the testimony of Mr. Malcho, the officer of the Industrial National Bank, indicating that the making of exhibit No 2 was for the purpose of furnishing money to Mr. Lynch, the plaintiff. The deal with the bank was entirely made by Lynch.

Exhibit No 2, the second so-called conditional sales contract, is in part as follows:

### "Conditional Sales Contract

"The undersigned seller does hereby agree to sell and the undersigned purchaser does hereby agree to purchase, upon the terms and conditions hereinafter set forth, the following goods and chattels, complete with standard attachments and equipment, which shall be installed and kept at 542 E. Fort, Detroit, Michigan.

"1 new 1947 model SCY–501 Worthington 5-ton air conditioner, complete with heating unit and ducts, serial No 1755 ........................................................... $3,488.25
"1 new 1947 model HB2, Empire red refrigerated bar, serial No 126 ...................................................... 514.00

"Total cash price .......................... $4,002.25
"Statement of transaction
"Total cash purchase price ...... $4,002.25
"Tax ........................... 96.32
"Total ........................ $4,098.57

"Unpaid balance ................. $4,098.57
"Cash down payment ............. $1,347.50
"Deferred balance ............... $2,751.07
"Time charge, 24 months ......... 330.12
"Time balance ................... $3,081.19

"The time balance shall be paid in monthly instalments of $128.38 on the tenth day of each month hereafter until the entire amount is paid. All payments shall be made to the seller at Industrial National Bank—Detroit and shall bear interest at the highest legal contract rate from their maturity until paid.

"It is further agreed: The title to above described property shall not pass by delivery but shall remain vested in and be the property of the seller or assigns until the purchase price has been fully paid, together with the interest and any other moneys becoming due hereunder, at which time the seller or assigns will transfer title to the purchaser. The purchaser acknowledges receipt of said property and shall have temporary possession of the same and the right to use and retain it so long as there shall be no default in any of the terms and conditions of this contract to be performed by said purchaser. The above property shall be and remain personal property regardless of the manner in which it is affixed or attached to the structure. The purchaser agrees to take good care of said property at his or her expense and not to sell or rent any part thereof, or assign this agreement, or part with possession of said goods or chattels or remove or permit the same to be removed from said premises without the written consent of the seller or assigns, and further agrees to save the seller and assigns harmless on account of any dam-

age which may occur to said goods either by reason of fire, accident, neglect or abuse but the injury or destruction thereof shall not operate to release the purchaser's covenants. If the purchaser fails to make any payment when due or otherwise violates this contract the seller may either (1) declare the entire sum remaining unpaid immediately due and payable and sue for the payment thereof, or (2) treat this contract as at an end, and with or without notice or legal process take possession and remove said merchandise, hold the same free of all claims of the purchaser and retain all payments made hereunder as rent for the use thereof, the purchaser hereby waiving all claims and rights of action for trespass or damages by reason of said entry and repossession. This contract shall inure to the benefit of, and bind the heirs, executors, administrators, successors and assigns of each of the parties hereto. There are no understandings, agreements, representations or warranties, express or implied, not specified herein, respecting this contract or the property above mentioned. Any provision of this contract prohibited by law or inconsistent with a pure conditional contract of sale shall be ineffective to the extent of such provision without invalidating the remaining provisions hereof. Any extension or assignment of this contract shall not constitute a waiver of the conditions hereof. The purchaser acknowledges delivery and receipt of a copy of this instrument at the time of its execution.

"In witness whereof, the parties hereto set their hands and seals this sixth day of January, 1947.

"L. M. Rozner Manufacturing Corp.
"Purchaser's signature
"Leonard M. Rozner, President
"Purchaser's signature
"Economy Refrigeration & Air Cond.
"Seller
"By George F. Lynch (owner)
"Authorized signature    *    *    *

"CONDITIONAL SALES CONTRACT NOTE

"$3,081.19   Date : January 6, 1947   No 10–303599

"On or before 24 months, after date, for value received, I/We, the undersigned, jointly and severally promise to pay to the order of Industrial National Bank—Detroit, the sum of $3,081.19.

"The principal sum shall be paid in monthly instalments of $128.38 on the tenth day of each month hereafter until the entire amount is paid.

"This note and all monthly instalments are payable at the office of Industrial National Bank— Detroit, 1408 Washington boulevard, Detroit, Michigan, or any of its branches.   If any instalment aforesaid is not paid on its due date then the entire principal sum shall become due and payable at once, without notice, whether due according to its face or not, and shall bear interest at the rate of 7 per cent. per annum until paid.

"Presentment, demand protest and notice are hereby waived by each party primarily or secondarily liable (whether hereon or otherwise) for the above indebtedness, and any extension or indulgence to any such party (whether with or without notice) shall not affect the obligation of any other such party.

"Signature :

"L. M. ROZNER MANUFACTURING CORP:<br>"LEONARD M. ROZNER—president

"Address :

"542 E. Fort—Detroit."

Plaintiff Lynch indorsed the note with full recourse and waived presentment, demand, protest and notice of protest and nonpayment.

Exhibit No 3 is as follows :

"ASSIGNMENT OF TITLE RETAINING CONTRACT

"For value received Industrial National Bank— Detroit, does hereby sell, assign and transfer unto Economy Refrigeration & Air Conditioning Service without any recourse or warranties whatsoever all

of its right, title and interest in and to the following title-retaining contract:

"Dated January 6, 1947 in the amount of $3,081.19 executed by L. M. Rozner Mfg. Corp. as purchaser, and Economy Refrigeration & Air Conditioning Company, as seller,

which covers the sale of the following described property:

"1 new 1947, model SCY–501 Worthington, 5-ton air conditioner, complete with heating unit and ducts, S.N. 1755.

"1 new 1947 model HB2 Empire red refrigerated bar, S.N. 126.

"In witness whereof, Industrial National Bank—Detroit, by its duly authorized officer, has hereunto set its hand and seal this 9th day of December, A.D. 1949 but as of July 30, 1947.

"INDUSTRIAL NATIONAL BANK—DETROIT

"By L. MALCHO (sgd.)

"L. Malcho, assistant cashier.

"Witnesses:

"VIRGINIA BRZEZINA (sgd)
"HELEN SHOKALUK (sgd)"

In exhibit No 2, hereinbefore set forth, the Empire refrigerated bar at $514 was an item sold on open account and was not mentioned in or subject to the preceding conditional sales agreement, exhibit No 1.

The trial court considered exhibit No 2 as being a conditional sales contract, as contended by plaintiff. The principal question in this case is whether it is to be treated as such or whether in view of all the circumstances it amounted to a chattel mortgage.

In *Cooper* v. *Brock,* 41 Mich 488, 490, the Court said, "If from the entire instrument, either standing alone, or read in the light of the surrounding circumstances, it appears to have been given as a security, it must be considered as a mortgage, and the law will apply thereto the rules applicable to mortgages,"

*i.e.,* what was a bill of sale in form was held to be chattel mortgage in effect.

See *Burroughs Adding Machine Co.* v. *Wieselberg,* 230 Mich 15, where we said at pages 19, 20:

"The character of the instrument is to be determined from its terms, from a consideration of rights and remedies stipulated therein or allowed by law as between the parties, and to some extent in the light shed by the circumstances surrounding the transaction. If the seller is not limited to right to retake the property and retain the payments made, but after reclamation may enforce payment of the remainder of the full agreed price, and the instrument is so worded as to permit this to be done, then the courts will recognize the instrument for what it is in fact and law, security in the nature of a chattel mortgage. If the title is retained as security for the payment of the full price and the obligation to further pay is not abated by a retaking of the property and retention of partial payments, then it is not a pure conditional sale but an undertaking in the nature of a chattel mortgage. Instruments giving the seller the rights and remedies of a mortgagee against the buyer and chattels the subject of sale, if rights of third persons do not intervene, but so colored as to be employed in support of a claim of conditional sale only, when rights of third persons do intervene, are *ab initio* instruments in the nature of a chattel mortgage."

Exhibit No 2 was not placed on record as a chattel mortgage. Defendant's chattel mortgage was placed on record immediately after it was given, October 30, 1946.

Counsel cite and the court have in mind several cases decided in this and in other courts concerning conditional sales agreements but in none to which our attention has been directed do we find an agreement upheld as a conditional sales agreement where the following elements were all present:

1. A detachable promissory note payable to a third party for an amount more than the original conditional sales contract purchase price was a part of the transaction.

2. The vendor received payment from the third party payee in the promissory note.

3. Chattel purchased on a previous conditional sales agreement, for which the claimed conditional sales agreement sued on, was a substitute, was subject to the questioned conditional sales agreement.

4. Chattels purchased on open account were comingled with chattels purchased on a previously existing conditional sales agreement, as items sold under the claimed conditional sales agreement sued on.

In *Federal Commercial & Savings Bank* v. *International Clay Machinery Company,* 230 Mich 33, we held, pages 36, 37 (43 ALR 1245), as follows:

"That the agreement required the buyer to give negotiable promissory notes, or negotiable trade acceptances, for the deferred instalments of the purchase price, or that they or either of them were in fact given, is not inconsistent with the retention of title in the seller pending payment, and does not of itself characterize the instrument as one for security in the nature of a chattel mortgage."

In that case we upheld the instrument as one of conditional sale.

However, in the later case of *Klingensmith* v. *James B. Clow & Sons,* 270 Mich 460, we quote with approval at pages 465, 466, from 3 Pomeroy's Equity Jurisprudence (4th ed), § 1195, as follows:

"While each case must involve its own special facts, the following circumstances are regarded by the courts as important, and as throwing much light upon the real intent and nature of the transactions: *The existence of a collateral agreement by the grantor to pay money;* his liability to pay interest; *where*

*a debt existed antecedent to the conveyance,* the surrender or cancellation of the evidences of such indebtedness, or the suffering them to remain outstanding and operative, or *the substitution of others in their place;* the price of the conveyance being inadequate; the grantor still left in possession; an application or negotiation for a loan preceding or pending the transaction." (Italics supplied.)

In the instant case we deem it of very great importance that plaintiff Lynch prepared or caused to be prepared the so-called conditional sales contract with a note attached thereto with a perforated line, that the note did not run to plaintiff Lynch, the vendor, but ran directly to the bank, so that the Rozner company, according to the face of the papers, became on the same day, January 6, 1947, indebted to the bank on the note for $3,081.19 and on that day, on exhibit No 2, became liable to plaintiff Lynch for the same amount of money, $3,081.19. The note with its perforated line was intended to be detachable. Included in the amount which the Rozner company became obligated to pay was not only the amount that was then unpaid for the air conditioning system under exhibit No 1, but also $528.85 for a Hollywood bar or barette, $495, and the sales tax thereon, $14.85, with charge for service, delivery and freight of $19. This bar as well as a heating coil and thermostat together with sales tax thereon, amounting to $201.69, were all bought on open account and were not subject to a conditional sales contract therefor. Such items (other than the air conditioner with heating unit and ducts) were not included in the preceding title retaining contract of October 7, 1946, exhibit No 1, and having been before January 6, 1947, sold on open account, were not properly included in the exhibit No 2 as goods sold on a title-retaining contract of sale.

The inclusion in exhibit No 2 of items of personal property which had theretofore been sold and delivered to the Rozner company on open account along with the air conditioning apparatus which had theretofore been sold on title-retaining contract, would require us, if we found for plaintiff, to find that the same document, exhibit No 2, is a conditional sales agreement as to the air conditioning apparatus and a chattel mortgage as to the items theretofore sold on open account.

It is further to be noted that because plaintiff drew or caused to be drawn exhibit No 2 and the detachable note attached thereto, that as to ambiguity created by the form and purport of the instruments read together, the ambiguity must be resolved against Lynch who caused the preparation of the instruments, and in favor of Rozner company, and those claiming under the Rozner company.

Rozner testified:

"Mr. Lynch told me that he wanted money to finance this purchase through the Industrial National Bank—Detroit so that he could be paid off on exhibit No 1 and for the other items purchased."

The signatures of Rozner company to exhibit No 2 and the accompanying note to the bank were obtained and the instrument delivered before the payment of moneys by the bank to the plaintiff Lynch and the assignment by Lynch of exhibit No 2 to the bank.

The execution and delivery of exhibit No 2 and the promissory note superseded and abrogated the preceding conditional sales agreement, exhibit No 1.

The intention of the parties, plaintiff Lynch and defendant Rozner, is to be gathered from the instruments that were executed and the surrounding circumstances.

Plaintiff Lynch caused and required that what in form was a conditional sales agreement should cover not only the air conditioning apparatus but other articles that had been sold on open account, and he further caused and required that the Rozner company execute a note for the total amount unpaid not only on the air conditioning apparatus which was a subject of the preceding conditional sales agreement, but also on the other items which were not purchased on any title-retaining contract basis whatever, and caused that the note be payable by Rozner company not to plaintiff Lynch but to the bank, for all of which reasons we conclude the trial court was in error in considering exhibit No 2 to be a conditional sales agreement. Under all the attendant circumstances and in view of the decisions hereinbefore cited, it is considered by us to be a chattel mortgage. It was not on file. The defendant Acceptance company in taking its chattel mortgage on October 30, 1946, took the mortgage including not only the property covered by exhibit No 2 but also a great many items of other property located at the place of business of the Rozner company and the mortgage also covered future-acquired property, so that when on January 6, 1947, exhibit No 2 with the accompanying note was executed and transactions of that date were completed, the title to the air conditioning apparatus, which was the subject of the replevin, passed to Rozner company and under the future-acquired property clause of defendant Acceptance company's chattel mortgage, the chattel mortgage of defendant Acceptance company attached to and became operative on the air conditioning apparatus which was later on taken under the writ of replevin in the case at bar. The taking of the apparatus under the writ of replevin was under such circumstances unlawful.

The judgment appealed from is reversed. The defendant National Acceptance Company of Chicago

waiving the return of the goods is entitled to a judgment against the plaintiff and its surety for $1,550, the amount in value of the air conditioning unit, in addition to $325 for the other goods taken, with interest upon said sums from July 29, 1950, the date of the seizure of the air conditioning unit under the writ of replevin.

In view of our decision, other questions raised in the briefs do not require a determination by us.

The case is remanded to the trial court with instructions to enter a judgment for defendant Acceptance company against plaintiff and his surety for the value of goods so taken, a total of $1,875. Costs in both circuit court and in this Court are awarded to defendant Acceptance company.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.