In the Matter of PRINCETON RUBBER CO., Inc., Bankrupt.

IRVING TRUST COMPANY, Appellant,

v.

C. Wylie ALLEN, Trustee, Appellee.

No. 12637.

United States Court of Appeals Seventh Circuit.

Dec. 3, 1959.

Sydney Krause, New York City, Melvin L. Goldman, Chicago, Ill., for appellant.

Joseph W. Grady, Charles G. Martin, James O. Brooks, Chicago, Ill., for appellee.

Before DUFFY, SCHNACKENBERG and PARKINSON,[1] Circuit Judges.

DUFFY, Circuit Judge.

Irving Trust Company (Irving) instituted a reclamation proceeding to reclaim certain machinery and equipment, consisting of twenty-eight items, which were covered by a chattel mortgage given by Princeton Rubber Company, Inc. (Princeton) to L. Albert & Son (Albert).

Princeton originally filed for an arrangement but was later adjudicated a bankrupt. In the ensuing liquidation of its property, the machinery and equipment in question were sold by the Trustee pursuant to court order, the lien of Irving to attach to the proceeds.

The Referee held that the chattel mortgage executed by Princeton did not constitute a valid lien on the personal property described as against the trustee in bankruptcy. He held the mortgage did not conform to the laws of Ohio and New Jersey where the property was physically located on the date when the note and mortgage were executed, because a copy of the chattel mortgage was not filed or recorded in each of those states. Upon petition for review by the District Court, the order of the Referee was approved and confirmed.

The original purchase price of the machinery and equipment was $121,085. Princeton paid $2000 in cash and the balance, $119,085, was evidenced by Princeton's note to Albert dated April 30, 1953. This note was secured by the chattel mortgage in controversy. The mortgage was executed contemporaneously with the note. On the date when the note and mortgage were executed, the machinery and equipment were located at Albert's warehouses in the states of New Jersey and Ohio. It was contemplated that such machinery and equipment would be used by Princeton in Chicago, Illinois. The chattel mortgage was filed in the office of the Recorder of Deeds of Cook County,

1. While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges above-named, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

Illinois, on May 4, 1953. Delivery was made in Chicago at various dates commencing shortly after May 4, 1953, and concluding in October, 1953.

On or about May 14, 1953, Albert assigned the Princeton note and mortgage to Associates Discount Corporation. The Princeton note was delivered to Associates and the chattel mortgage was assigned by written assignment from Albert to Associates. This assignment was filed with the Recorder of Deeds of Cook County, Illinois, on May 14, 1953.

On October 8, 1954, Albert satisfied the loan to Associates out of proceeds of a loan of $108,000 made by Irving to Albert, and Irving received the security previously held by Associates, to-wit: the Princeton note and mortgage. No formal assignment of the mortgage was made by Associates Discount Corporation to Irving until December, 1956. This assignment was filed in the Recorder's office of Cook County, Illinois, on February 6, 1957.

An affidavit for extension of the chattel mortgage was filed by Albert with the Recorder of Deeds of Cook County, Illinois, on May 4, 1956. At that time the unpaid portion of the original debt had been reduced to $77,241.83.

Princeton continued to make payments on the note in question during the time it was held by Irving, and the unpaid principal amount was reduced to $56,-611.73. It is this sum, with interest, which Irving now claims out of the proceeds of the machinery and equipment which was sold. The amount realized on the sale was $64,000.

■ The Trustee cites authorities which he claims establish the rule that where the mortgaged chattels are in a state other than the place where the chattel mortgage was executed, the mortgage must be recorded in that state. Conceding that such is the general rule, we think that under Ohio and New Jersey laws, there is an exception where the mortgaged chattels remain in the hands of the mortgagee. See Title 13, Ch.

1319, Par. 1319.01, Ohio Rev.Code, and Title 46, Par. 46:28–5 N.J.Rev.Stats. Also Avon Chair Co. v. Essex Restaurant Corp., 131 N.J.Eq. 448, 26 A.2d 40, where the Court held that the possession by the mortgagee was, in fact, a full substitute for recording.

On April 30, 1953, the date of the execution of the mortgage, the machinery and equipment covered by the mortgage were physically located in Ohio and New Jersey. The stipulation discloses that all of the machinery was delivered by Albert to Princeton at Chicago. The exact time and date of the arrival of the first shipment of machinery in Chicago is not clear from the record before us. However, the preparation for shipment, and the shipment itself, of machinery and equipment would normally take a minimum of several days. We are entitled to and do draw the inference that the first shipment did not reach Chicago before May 4, 1953, the date when the mortgage was recorded in Cook County, Illinois.

Historically, the purpose of the recording and filing statutes was to give notice to persons who might possibly be misled into extending credit to the ostensible owner, where a security interest therein had been transferred to another. But, where the chattels are not in the possession of the mortgagor, creditors cannot be deceived. In the situation before us, it is difficult to visualize how a creditor of Princeton could have extended credit based on machinery and equipment located in Albert's warehouses in Ohio and New Jersey.

■ The Trustee relies upon In re Steen, 7 Cir., 257 F.2d 297. However, in Steen, the chattels subject to the conditional sales agreement were delivered by the Texas seller to the Illinois buyer in Texas. In the case at bar, it is stipulated delivery was made by Albert to Princeton at Chicago. We hold the failure to file or record the chattel mortgage in Ohio and New Jersey did not invalidate that mortgage.

Trustee argues that the extension of the mortgage by Albert was without legal effect, claiming Albert no longer owned the mortgage. We might well ignore this point completely as it was neither pleaded nor argued in the court below. In fact, Trustee specifically admitted the truth of ¶4 of the reclamation petition which paragraph specifically alleged the extension. Furthermore, Irving's interest in the Princeton note and mortgage was a security interest.

■ Trustee refers to "private and secret maneuvers" of the parties who held the chattel mortgage. Nevertheless, we cannot avoid the fundamental fact that the mortgage involved was a purchase money mortgage given in connection with a *bona fide* transaction whereby Princeton purchased machinery for use in its factory. All parties dealing with Princeton could ascertain from the public records in Cook County, Illinois, that the lien existed.

■ Trustee also argues that the machinery and equipment were after-acquired property, and that a chattel mortgage on after-acquired property is not valid in Illinois against purchasers, judgment creditors and lien holders He relies on the case of In re Danville Hotel Co., 7 Cir., 33 F.2d 162. We do not think the contention is sound. In all cases relied on by Trustee, the property involved was not in existence at the time when the mortgage was executed. Thus, in the Danville Hotel case, we stated, page 165: ."Thus the question is raised as to whether a mortgage upon chattel property, having no existence at the time of the execution of the mortgage, * * *." In the case at bar, the chattels were in the seller's warehouses, and were in the actual possession of the seller on the day the mortgage was executed.

Judgment below is reversed with directions to grant the prayer of the reclamation petition.

Reversed.